**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **(1) REBECCA CRAIG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | CIV-21-529-JD |
| | ) | |
| **vs.** | ) | |
| | ) | **COMPLAINT** |
| **(1) TRANSWORLD SYSTEMS, INC., AND** | ) | **(Unlawful Debt Collection Practices)** |
| **(2) CONVERGENT OUTSOURCING, INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | | |

## COMPLAINT

NOW COMES Plaintiff, Rebecca Craig (formerly Peterson), and for her Complaint against Defendants, Transworld Systems, Inc. ("Transworld") and Convergent Outsourcing, Inc. ("Convergent"), alleges as follows:

## INTRODUCTION

1.     Plaintiff states a claim against Transworld and Convergent for state privacy laws and violation of the Fair Debt Collection Practices Act, codified 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which was enacted in 1978.

2.     Congress stated its findings and purpose of the FDCPA:

(a) **Abusive practices**

> There is *abundant evidence* of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) **Inadequacy of laws**

> Existing laws and procedures for redressing these injuries are

COMPLAINT                                                                                       1

inadequate to protect consumers.

(c) **Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) **Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) **Purposes**

It is the purpose of this title to *eliminate* abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## JURISDICTION AND VENUE

3.      Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy.

4.      Defendants conduct business in the state of Oklahoma; therefore, personal jurisdiction is established.

5.      Venue is proper pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

6.      Plaintiff is a natural person who resides in Norman, Cleveland County, Oklahoma.

7.      Plaintiff is a consumer as that term is defined by 15 U.S.C. 1692a(3), and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by 15 U.S.C. 1692a(5).

8.     Defendants are each a "debt collector" as that term is defined by 15 U.S.C. 1692a(6), and sought to collect a consumer debt from Plaintiff.

9.     Defendant Transworld is a corporation chartered under California law with principal offices at 507 Prudential Road, Horsham, Pennsylvania 19044. It conducts business in Oklahoma.

10.     Defendant Convergent is a corporation chartered under Washington State law with principal offices at 800 SW 39th Street, Suite 100 Renton, WA 98057. It also conducts business in Oklahoma.

11.     Defendants seek to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce.

12.     Transworld holds a collection agency license in several states.

13.     Among the debts that Transworld collects are private student loans allegedly owed to a large number of "National Collegiate Trust" entities.

14.     The "National Collegiate Trusts" claim to be Delaware statutory trusts.

15.     The "National Collegiate Trusts" have no employees.

16.     The "National Collegiate Trusts" do have a corporate trustee.

17.     All acts at issue in this matter that were performed by or on behalf of the "National Collegiate Trusts" were actually performed by Transworld, or attorneys employed by Transworld.

18.     Transworld claimed to be servicing agent of the "National Collegiate Trusts."

19.     On information and belief, Transworld claimed to be a servicing agent of the "National Collegiate Student Loan Trusts."

20.     In 2017, the Consumer Financial Protection Bureau took action against the

National Collegiate Student Loan Trusts and their debt collector, Defendant Transworld, for illegal student loan debt collection lawsuits. *See In the Matter of: Transworld Systems, Inc.*, Administrative Proceeding File 2017-CFPB-0018. The Administrative Proceeding alleged that consumers were sued for private student loan debt that the companies couldn't prove was owed or was too old to sue over and that these lawsuits relied on the filing of false or misleading legal documents.

21.     On September 18, 2017, Defendant, Transworld Systems, Inc., entered into a Consent Order with the Consumer Financial Protection Bureau regarding the Administrative Proceeding where Defendant agreed, *inter alia*, to:

   a.   Stop attempting to collect, reporting negative credit information, and suing consumers for debt without proper documentation;

   b.   Stop filing false or improperly notarized legal documents; and

   c.   Pay a $2.5 million civil money penalty.

## FACTUAL ALLEGATIONS

22.     On September 28, 2016, National Collegiate Student Loan Trust 2006-4 ("NCSLT") filed a lawsuit against Plaintiff and her ex-husband, Ryan Peterson, in Cleveland County, Case Number CS-2019-8, seeking to collect Mr. Peterson's student loan debt (the "State Court Action"). The State Court Action included a filed affidavit signed by Defendant Transworld, claiming the amount Ms. Craig owed for her ex-husband's student loan was $5,015.91, plus interest.

23.     Upon information and belief, Defendant Transworld directs debt collection litigation to collect on defaulted student loans purportedly assigned to NCSLT.

24.     Upon service of summons, Ms. Craig engaged legal counsel to file an Answer on

her behalf in the State Court Action on February 11, 2019. On February 12, counsel for

Plaintiffs transmitted a facsimile correspondence to Love, Beal & Nixon ("LBN"), counsel and

agent for Defendant Transworld and NCSLT, communicating that he represented Ms. Craig

regarding the debt identified in the State Court Action.

25.    On March 3, 2008, LBN sent Ms. Craig additional correspondence from

regarding other student loan accounts belonging to her ex-husband, identifying LBN File

Numbers 19-3811-1 (NCSLT 2006-4, with balance of $13,727.40) and 19-3812-0 (NCSLT

2007-1 with balance of $3,494.65). See correspondences from LBN to Rebecca Peterson, dated

April 17, 2019, attached as Exhibit 1.

26.    On April 2, 2019, LBN dismissed the State Court Action against Ms. Craig *with

prejudice.*

27.    On or about April 7, 2019, counsel for Plaintiff's counsel transmitted another

facsimile correspondence to LBN, notifying Defendant Transworld that he also represented

Plaintiff with respect to these other student loan accounts incurred by Mr. Peterson. *See

correspondence* from Victor Wandres to LBN, dated April 7, 2019, attached as Exhibit 2.

28.    On April 17, 2019, LBN responded to Ms. Craig's attorney with letters

purporting to "validate" these accounts dated April 11, 2019. See correspondences from LBN to

Victor Wandres, dated April 17, 2019, attached as Exhibit 3.

29.    As of April 17, 2019, Defendant Transworld therefore knew Ms. Craig was

represented by an attorney regarding these debts because LBN, acting as Transworld's agent,

was on notice of such representation.

30.    On July 13, 2020, a judgment was entered against Ms. Craig's ex-husband in the

State Court Action.  Defendant Transworld has since been begun garnishment of Mr. Peterson's

wages.

31.     Upon information and belief, at some point after Plaintiff engaged legal counsel in the State Court Action, Defendant Transworld instructed Defendant Convergent to collect the debt from Plaintiff on its behalf. Beginning in about September, 2019, Defendant Convergent began calling Ms. Craig ***directly*** regarding the debt. Initially, when Defendant Convergent called Ms. Craig, the Convergent representative would ask to speak with Plaintiff's ex-husband, Ryan Peterson. Ms. Craig would tell Convergent that they had the wrong number, and Convergent would apologize and hang up. However, at one point a Convergent representative asked for Ms. Craig first by her *former* last name (Peterson), then followed by her maiden name, Craig. The Convergent representative refused to identify the company name unless Ms. Craig would provide her social security number and address, which Ms. Craig declined to provide.

32.     Sometime in the first quarter of 2020, Defendant Convergent called Plaintiff regarding the debts. Plaintiff told the Convergent representative that she needed to contact her attorney. *The Convergent representative told Ms. Craig that **she already knew** the name of Plaintiff's attorney without asking Ms. Craig*, however, she continued to press Ms. Craig to answer questions regarding the debt and why she hired legal counsel.

33.     On September 22, 2020, October 7, 2020, November 10, 2020, and possibly other dates, Defendant Convergent sent letters directly to Plaintiff attempting to collect on the same alleged debts, in violation of §1692c(c) of the FDCPA. See Letters from Convergent, attached as Exhibit 4.

34.     Additionally, the calls from Convergent began to occur more frequently and harassing. For example, on March 2, 2021, Defendant Convergent called Plaintiff at 8:31am, 8:50am and 11:16am. On March 11, 2021, Defendant Convergent called Plaintiff at 1:15pm, then again 41 minutes later at 1:56pm. March 23, 2021, Defendant Convergent again placed 2 calls to Plaintiff within 40 minutes of each other, never leaving any messages.

35.    Upon information and belief, Defendant Transworld either withheld from Defendant Convergent that Plaintiff was represented by counsel with respect to the debt, or Defendant Convergent willfully ignored information provided to it by Defendant Transworld that Plaintiff were represented by counsel with respect to the debt.

36.    Ms. Craig has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of her personal privacy.

37.    The acts and omissions of Defendant Convergent who communicated with Plaintiff as further described herein, were committed within the time and space limits of its agency relationship with principal, Defendant Transworld.

38.    The acts and omissions by Defendant Convergent and its employee debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Transworld in collecting consumer debts.

39.    By committing these acts and omissions against Plaintiff, Defendant Convergent was motivated to benefit their principal, Defendant Transworld.

40.    Defendant Transworld is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, in their attempts to collect this alleged debt from Plaintiffs.

## COUNT I
## DEFENDANTS VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT, (FDCPA), 15 U.S.C. § 1692 et seq.

41.     Defendants violated the FDCPA.  Defendants' violations include, but are not limited to the following:

a.)     Defendants violated §1692c(a)(2) of the FDCPA by communicating directly with Plaintiffs regarding a debt, even though Defendants knew, or should have known, that Plaintiff was represented by an attorney with respect the debt and had knowledge of the attorney's name and address;

b.)     Defendants violated §1692d by refusing to provide the name of the company calling to Plaintiff when requested and §1692d(5) by harassing Plaintiff through numerous calls in close proximity to each other regarding the debt, causing her telephone to ring repeatedly with the intent to annoy, abuse or harass Ms. Craig.

c.)     Defendant Transworld violated §1692e, §1692f, and §1692e(10) by not advising Defendant Convergent that Plaintiffs' were represented by legal counsel with respect to the debt.

<u>**COUNT II**</u>
<u>**INVASION OF PRIVACY**</u>

42.     Plaintiff is entitled to recover damages for the Oklahoma common law claim of invasion of privacy.  Defendants' actions of contacting Plaintiff with knowledge she was represented by legal counsel constituted invasion of her privacy as it was an intrusion upon seclusion.

43.     Such intrusion was intentional (or was with reckless disregard), was without Plaintiff's consent, and would be considered highly offensive to a reasonable person.

44.     Plaintiff is entitled to recover actual and punitive damages in an amount exceeding $10,000.00 for her common law invasion of privacy claim.

**WHEREFORE**, Plaintiff, Rebecca Craig, respectfully prays that judgment be entered jointly against Defendants, Transworld and Convergent, for the following:

a)      Statutory damages of $1,000.00 for each Plaintiff, pursuant to the FDCPA, 15 U.S.C. 1692k;

b)      Actual damages pursuant to the FDCPA, 15 U.S.C. 1692k;

c)      Costs and reasonable attorney's fees pursuant to the FDCPA, 15 U.S.C. 1692k; and

d)      Actual and punitive damages for her Invasion of Privacy Claim;

e)      Any other relief that this court deems to be just and proper.


Respectfully submitted,


/s/ Victor R. Wandres
Victor R. Wandres, OBA #19591

PARAMOUNTLAW
CONSUMER PROTECTION FIRM

1202 E. 33rd Street
Tulsa, OK 74105
(918) 200-9272 voice
(918) 895-9774 fax
3510@paramount-law.net